Council, please approach the podium. I see many councils. I think that only two will argue. That's correct, Your Honor. Tell us who you are, who you represent, and approximately how much time you need. Your Honor, I am the appellee. My name is Marvin Leavitt. I'm here with Jamie Roman, and I'm here with Richard Wilson as well. We represent, as I said, the appellee, Malini Byana. The case comes before Your Honor, as you know, on a 308 certification. It's a very limited, discrete issue. I think 20 minutes would be sufficient for appellees. Judge, I'm Michael DiDomenico from Lake Tobacco. I am here with Alan Tobacco from my office, and I represent the appellant, Vikram Akula. And I would think about 15 to 20 minutes for my side. It would be pretty generous with the time, but I'd say stick to what you consider your strong points. Presume that you have read your briefs. You have read or I have read most of the submissions. So let's proceed. Your Honor, one request. One thing I ask you is keep your voice up. I'll do that, Your Honor. One request. I have an easel, and I have some of the law for demonstrative purposes. I'd like to put the easel up unless you have objection with that particular section that we're looking at. No objection. Thank you. Good morning, again, Justice Murphy, Justice Steele, Justice Quinn. Again, my name is Michael DiDomenico from the law firm of Lake Tobacco, and I represent the petitioner, Appellant Vikram Akula. Your Honors, I'm going to start by reciting the prayer for relief that is contained in my opponent's underlying request for declaratory judgment. The prayer for relief states that the court enter an order declaring that the residence of Molony and the minor child is and remains in Illinois, and that this court continues to have original, exclusive, and continuing jurisdiction over the issues of child custody and visitation in this case. The Circuit Court granted that relief on summary judgment. Your Honors, as a matter of law, under the facts of this case. Is this a question of law and fact, or a question of law only? I think it's a question of law in light of the holding of the Illinois Supreme Court in the In Re Sofia GL case, and that is why the relief prayed for and the relief granted is not able to be obtained here, because that relief, the finding that's asked to be declared, was adjudicated by the Indian Family Court in Hyderabad. The November 24, 2009 order finds that the residence of the parties and of the minor child is Hyderabad, India, as of the date that the petition in my client was filed. But they did not say the residence was not Illinois. That's correct. And that is the only argument advanced by my opponent in this case. There was no dispute. So we look at jurisdictions determined at the date of the filing. On the day of the filing, where was Melanie at? Where was she located at? Yeah. She was in the United States. In Chicago area. In Chicago area. She came here for surgery apparently on her back. She still owned a home here, did she not? Running it out to somebody? I think she was running it out to somebody or was attempting to run it out to somebody. That's correct, yeah. But where she was physically is different from what the Indian Court adjudicated her residence to be. And the Illinois Supreme Court has told us that that finding is binding upon this Court, binding insofar as it is not subject to a collateral attack, which is all that the underlying petition for declaratory judgment filed by my opponent is trying to do. But in looking at Sophia G. quoting, any testimony heard by the Indiana Court which would present a contrary position, such as testimony given by Alexis, was not made part of the record. So they didn't have that part of the record in front of them, the Supreme Court and Sophia. And then they held the next sentence. Thus, in determining whether Indiana had home state jurisdiction over this matter, pursuant to Section 201, we only consider whether Sophia resided in Indiana for six consecutive months prior to the commencement of the custody proceeding and whether a parent or person acting as a parent continued to reside in the state. And since we do accept the Indiana Court's factual assessments. But here where we know Malini is here, we're to accept the assessment that even though she's here, she was living in Hyderabad or ordinarily residing in Hyderabad. Yes, because the Supreme Court said, further in that case, those findings are not subject to relitigation. We cannot come back here. And let's talk about why they might say that. What's the policy behind saying that you cannot relitigate the findings of another court? Well, the UCCJEA and its predecessor statute was designed to confront the issues of a mobile society. People move around a lot. People relocate from state to state and from country to country. And so we needed a uniform mechanism to resolve jurisdictional disputes among states and now among countries when these issues arise. Now, if one court can simply disregard the findings of another court, well, that defeats the whole purpose of the Uniform Act in the first place. Well, they've heard that Malini was given sole custody by our court. That's correct. And if I can ask you, going back, what was going to happen after four years? What was the plan? There wasn't any plan. They were going to try for four years? The plan was that they were going to relocate there for four years. At the end of four years, perhaps she would have stayed another four years, or perhaps she would have come home. I'm not sure that that's what we can surmise what might happen in the future, what might not. But is that really relevant? The relevant question is where are you presently residing at the time the action is commenced? That's what the law is. That's what the UCCJEA says. She was actually, what, how many months was Malini there before she returned to America? Three months? Two months? Well, she ostensibly returned after the litigation was commenced in India. Well, she was here, right? She was here in October. And that's when she says by e-mail, I want my child back in Chicago. So what day had she moved to India? What day had she moved in India? To India. To India. It was at the end of July, beginning of August. So she lived in India then for all of August, all of September, and a week in October. So two and a half months. That's correct. Okay. That's correct. Now, if this Court is struggling with the amount of time she was there, well, that is, well, I appreciate that point. How long does she have to be there? What happens if the case, what happens if this was the case? What happens if the two parties got into a disagreement in year three of this arrangement and the child had been attending school in India for three months? You have a much stronger case. No question about it. I'm not sure it impacts the strength of my case at all because the Indian You're entitled to your opinion, too. Had she ever been there before? Had Malini ever been into India before she went there? She's of Indian descent, yes. She's born and raised in India. She lived there for how many years prior to that? That I don't know. I mean, I'm of Irish descent, but I spent exactly ten days there. That I don't know. I don't know how long she's been there. I know she's of Indian descent. She had extended family there. They both do. They both have extended family. I bring it up because of this. I have a concern just how this works. If they've been divorced for several years, they then get back together, and then they move to a foreign country. That's extremely foreign country. I mean, it's far away. And they go there with the idea of staying for four years. That's the outdate. But she has a 90-day notice on her lease from Ma. It would seem to me, then, that a normal person looking at that would say, They're trying this out. They're taking their kid, and they're going to a foreign country with their child, and they're going to try and see if this works. And then after two and a half months, Malini decided, This isn't working out. I don't want to be an Indian with my child. I want to be home in Chicago with my child. And that seems to me that's what occurred here. And the question then comes down, if that's what occurred, and that's what it looks like to me, who should have jurisdiction? The court that had jurisdiction for, what, five, six years of the child's life? Or the Indian court that had the child for two and a half months? I can tell you the mechanism that the legislature has given us to resolve that question is 202A2. It has empowered courts of another state, or in this case, courts of another country, to assume jurisdiction over the case if one determination is made, and that is if the parties are no longer presently residing in Illinois. That is, in effect, exactly what the Indian court found. I mean, this was a 62-page opinion, nearly all of which considers the issue of jurisdiction and whether or not this judge should have assumed jurisdiction in the case. He very thoughtfully considered the arguments presented by both sides, weighed the evidence. Her four-year residential lease, the residency permit obtained by the Indian government, her placing the child in school there, I mean, is there anything more telling about where you intend to remain, where you intend to reside for the future and in the present, than enrolling your only child in school there? Is there anything more telling than that? Yeah, you're buying a house, getting a job. I'd suggest if you bought a house, as opposed to renting one with a 90-day option, I think that would be a pretty clear clue that you intended to remain there. Not just taking out a temporary residency permit for four years. Right. And I might add, under Indian immigration law, those residency permits, and my opponent characterized this as a tourist residency visa. There's no such thing. There's a tourist visa like we have here, but residency permits are not issued in the tourist fashion. And those residency permits are issued in six-month intervals. But she has it for four years. But she has it for four years. Why? Because she intended to remain there for at least four years. Now, we get in an argument because Grandma takes the child to school, and we say, well, the whole deal is off. Send the child home. We're going to pull them out of school, and the whole thing is off. You're in the Domestic Relations Council, and that's – I'm sorry, Justice. What do the framers of 20282 say, or if anything, in reference to residence and domicile? One thing they've made clear from the committee notes is that this is not a technical – this is not a technical inquiry into residence and domicile as if in the personal jurisdiction sense, as we typically understand it in different areas of law. This is almost an existential inquiry. Where are you physically at? At the time the action is commenced. And if you're – you can't be in two places at once. I mean, the words of the statute, presently residing, adverb, verb, where are you? Where are you physically at at the time that you – It was where you're physically at. She was here. That's why it's an ex parte order. But, Your Honor, I reside in Illinois. If I go to California and somebody sues me while I'm in California, that doesn't mean I'm a resident of California. That just happens to mean I was in California when I got sued here in Illinois. That doesn't make me less of an Illinois resident because somebody commenced an action where I live. She wasn't on vacation in Chicago. She has a house here. No, respectfully, she gave up her residence. Let me ask you a question. Yes, Your Honor. With the same set of facts here in Illinois, could Judge Steele and I reach a different conclusion? Would both of us be right? I'm not sure I understand. Well, we have all these facts. Yes. The court in India – let's say India – the court in India could reach one conclusion, and yet another court in India could reach a different conclusion on the same set of facts. Is that how you interpret them? I suppose if you presented these same set of facts to a different judge, you could reach a different result. But that's the reason why you can't – we cannot go behind the order. You answered my question. Judge Quinn raised an interesting issue, and he says they were trying it out there. That may well be, but I got the impression after reading this and reading this that this all started over a problem with the mother-in-law. Is that right? That's what the dispute was. Did anyone try to work that out? It's none of my business. You don't have to answer that. There's longstanding – there's unfortunately longstanding animosity between the two sides of the family, and unfortunately – Is that why they've been divorced for six years? That is. They were actually married for all the year. Right, I see that. So they were divorced infinitely longer than they were married. And been in litigation for almost that entire time. But yes, that is the reason why the Indian Court's order cannot – that's why the Illinois Supreme Court has said we cannot go behind that. That's why this Indian judge, after consideration, says, you know what? I'm here to act in this child's best interests. I'm not going to let a squabble between the mother and grandma disrupt this child's education. Your Honors, when I say that her insistence to send the child home, send the child back to the United States after making a major life decision, to make a major life change, to move to the other side of the world, when I say that that was not in the child's best interests, I'm not making an argument. That is an adjudicated conclusion of law reached by the Indian judge. He said I'm acting in this child's best interests. He talked to the child. And that case is currently in the Indian Supreme Court. That's correct. The Indian Supreme Court invited them, in light of the jurisdictional dispute and in light of the fact that our arguments here are premised upon the 1124 order, invited them to file a PLA, what we would call a PLA. Well, certainly if we rule on it quickly, and by law we're compelled to rule on this quickly, I imagine then the thought process would be then to notify the Indian Supreme Court of our actions here. Absolutely. Right? Is there some reason we shouldn't stay things since the child is currently in Hyderabad? Malini is currently staying with the child in Hyderabad until the Indian Supreme Court rules on the correctness of the decision that you say we're not allowed to question what they are? That is precisely the only issue that is open in my mind on my side of the case. Okay. That is, in the cases cited in my brief, the ABAM case from the Montana Supreme Court and even the Sophia GL case, both courts effectively said, listen, the Pennsylvania trial court's findings, the Indiana court's trial findings, we're not going to review. You don't get to come back here and collaterally attack them. You have to go back and take that direct appeal. Now, in those cases, that wasn't done. Here it's being done. But you don't get to do both. You don't get to do what she's doing. You don't get to collaterally attack it and do a direct appeal, which is what she's doing. So, but to answer your question. Well, my concern would be. Go ahead, please. But your concern is legitimate. And I don't have an answer because the UCCJEA doesn't catch that possibility. What happens if the two justices in Delhi say, well, bad order, it's gone? I don't know. After we've ruled that it's a good order. That's correct. And so that's a problem with the collateral proceedings. I didn't agree. That's absolutely correct. And, you know, there's not a good answer for that, other than to say that the proceedings in Delhi have been going on for months. They've had every opportunity to disrupt the status quo. In fact, all they've done so far is affirm the status quo that the child will continue studying in Hyderabad, will continue in his school there, and that's not going to be disrupted. Okay? But to be fair, the merits of her appeal from the 11-2409 order have not been adjudicated. Now, that's set for final hearing on August the 10th. If you know, so it's up on August 10th, there's a hearing in front of the India Supreme Court? It's been set for final hearing several times. Right. And the court went into recess at the beginning of May, and I think that they sort of deferred it for the summer, and they didn't get to the meeting. I bet it's hot there. I bet it's hot there, too. I like here. Another point I wanted to make, and this is this case from California that my opponent relies upon very heavily in his brief, and the circuit court, Judge Loza-Below, basically solely relied on, this case called Nury, Nury v. Rizvi, from the California Appellate Court. The facts of that case were family was living together in California, the mother apparently had extended family in Pakistan, went for an agreed-upon visit to visit her family in Pakistan and decided to stay there against the father's wishes and didn't come back to California. Dad got mad, filed for divorce, California assumed home state jurisdiction because that was where the child was residing for the immediate six months, and that sort of speaks to your point, Justice Quinn, is that the proceeding that the father in Nury filed, the child wasn't there, and that's what home state said. You don't have to be physically there. It just has to be the child's home state for the immediate six months. But that's an initial, that's the question of initial jurisdiction. But proceedings then were, then he went to Pakistan to try to get his child back. Proceedings were commenced there. Apparently somehow the child was brought back to California, so at the time that the Nury case was decided, the child was located, was back in California in school there. And we go up on appeal of the California appellate court, and the holding is that Pakistan, none of the Pakistani orders, and interestingly none of the Pakistani orders were published by the Nury court in their opinion, so we don't know what the Pakistani court said. But what is clear, what we take from it is there was no 20282 determination at all, nothing, zero. No adjudication of residency one way or the other. But if there had, do you think it would come to a different result from what the California court said in their very lengthy opinion? Well, I don't know. You know, the way I think about the Nury case, I'll be honest with you, the digression that I point out in my brief, because we have a substantial departure from what I consider the holding of the case, because I don't take issue with the holding of the Nury case. No 20282 determination of not, of where you live, California would have, that's what the law says, but that's not what happened. But if it had, and the child was there, I don't know the answer to that. And I think that the fact that the child was still in, the father found the child's way back to California and he was there, in school there, residing there, I don't think that they would have ever sent the kid back. That's my honest, and I think that the child's presence in California influenced the rest of that opinion, because the digression that they go to about this concept of a functioning residence and this concept of a present residence, those are not terms found in the UCCJEA. Those are, a functioning residence is more, sounds to me more like a domicile. And the committee notes make clear that even if the initial state still considers you a domiciliary, that does not preclude that state from losing its initial child custody jurisdiction. That's what the committee notes say. So it can't be any clearer. Well, go to the committee notes in the last sentence, and this is from the committee notes cited in the ABAN. Exclusive continuing jurisdiction is not reestablished if, after the child, the parents, and all persons acting as parents leave the state, the non-custodial parent returns. Here, Malini is a custodial parent, right? Under the old order. So going back then, so your theory then would be that the uniform code or whatever you want to call it, the UCCJEA, when it says non-custodial parent returns, that would almost have to be, well, how would that be the non-custodial parent at one? I don't know. And I don't know why it only limits itself to the non-custodial parent. I think the intent of the statute is clear. It's where are the parties and the child presently residing. If they've left, if they're no longer presently residing in Illinois, then that's the end of it. And another court determines that that's the end of it. I'm not sure if one of them runs back. Whichever one doesn't like the result in the other court is going to run back, whether that's the non-custodial or the custodial parent. Clearly that's the case. But I think the point of this, the intent of the statute is once the determination is made that they are no longer presently residing in the initial state, that's the end of it. That's the end of the inquiry. And that's where the Nury Court should have stopped. But it's the rest of it that, frankly, this digression that I call dicta, that my opponent seems to consider the holding of the case, there is no citations to any portion of the UCCJEA in the sole paragraph that they rely upon. We're at the functioning residence. Just because, you know, the concept of some lingering part of your life remaining in the initial decree state, if you've taken up and left to go live somewhere else, that's not enough to maintain exclusive continuing jurisdiction. And it certainly depowers courts of other states and courts of other countries from acting pursuant to the power that the legislature has given them into O2A2. If, you know, no court could ever assume jurisdiction if there's some functioning residence or some lingering part of your life here. I mean, I don't, you know, they don't define. Well, because they're present here, which is, I guess, the issue. You know, she was here. She's here. And, again, so it's only for MCLE. It's only for back surgery. She was here. And she had an order here. They lived here. The kid was born and raised here. She was given sole custody here. And the child was, what, six, seven years old? She's gone for ten weeks, and now the child is taken from her. And it's not a kidnapping. All the vitriol from Frankie, both sides, down below. I'm not criticizing you now. But it's not a kidnapping. But she's gone for ten weeks, and now she doesn't have her kid. So, which defies one of our orders. Up until ten weeks, if for the ten weeks she's gone, you say that's enough. Well, Your Honor, you know, and I took my opposing counsel to task at the hearing before Judge Loza, and since then they sort of backed off. You know, they talk about this child as her child. My client is her child. But it's my client's child, too. He is a father. He's the father of this child. He has rights. We have manic threats being made. I'm coming back to India. Well, Your Honor, I just want to account for my client's actions. He, manic threats being made. I'm going to take him. I'm going to come back. I'm going to take him out. What other choice did he have but to go to court and to protect his child? I'm not criticizing your client for going to court. At least not up here. Right. He went to court. Keeps judges in business. That's right. That's why we're here. If the Court doesn't have any other questions at this time, I'll stop here and let Justice Leavitt address the Court. Thank you, Counsel. No questions. If I may resort to my boards for one second, Your Honors, and I want to get to the certified question if I can, and that is do we give the Indian Order recognition because it acted under factual circumstances in substantial compliance with the UCCJEA? If I could just put the law up there for one second and at least construct my argument. Let me answer a question asked by Justice Steele in terms of the intent of the UCCJEA and the relevant section. If you take a look at my opponent's brief, at Bikram's brief, you're going to see he cites to the committee comments and then he underlines certain things within those comments. But what he should have done was underline the whole thing because it should be read in pari materia. What he says the comment notes and focuses on when the child, the parents, and all persons acting as parents physically leave the state to live elsewhere, the exclusive continuing jurisdiction ceases. But when you read the whole committee comment, it says, it is the intention of this act that paragraph A2 of this section means that the named persons no longer continue to actually live within the state. So it's not just that they've left. It's that they no longer actually continue to live within the state. And I think from the comments of Your Honors, it's clear that Melanie was living within the state. So how do we look at this Indian order when that fact is abundantly clear?  Let me ask the same question. I might be wrong. I'm sorry. I ask if the court in India, who are here, under the same factual situations, could Judge Steele and I reach different conclusions and we're both right? It's just our interpretation of the facts? Well, if you had the same facts, but you didn't. You could if you had the same facts, have reached different conclusions. But our argument before Judge Loza and why she ruled the way she did was because the Indian court didn't inquire as to certain of the facts that are now being presented. And our argument is- Were both sides represented? Well, no. It was an ex parte hearing to begin with. Well, finally there was a hearing. Well, actually, there was never really a hearing. There was submissions, but there was never people put on the stand and testimony that were affidavits filed. The first hearing was an ex parte hearing, correct? And then they were both represented by legal counsel. Correct. And they had a full hearing. Is that correct? Well, full hearing in the sense that affidavits were submitted. Malini wanted to have a hearing. She wanted to testify, but it was done on affidavit. And if in the sense that affidavit satisfied, yes, there was a hearing. Both sides were represented by counsel? Both sides were. And the judge had three of them, three family members and chambers with their attorneys? Correct. But, again, the issue as we raised it is did the Indian court make the proper inquiry? Because if you read the 62-page order, nowhere within that order do you find a line that Malini ceased living in Illinois. And if I may just very quickly. You expect us to read that, I take it.  All right. Court Justice Murphy is at this time. Maybe I should put it up here. They don't have to correct it. You know, the act and the change from the UCCJA to the UCCJEA is essentially this provision that we'll now treat a foreign country as if it were a state of the United States. And then when will we give its orders, when will we give its orders validity in this role down here? When, except as otherwise provided in subsection C, a child custody determination made in a foreign country is made under factual circumstances in substantial conformity with the jurisdictional standards of this act. If the Indian court had done that, Justice Murphy, if it had inquired of facts that you now know, if it had made then the proper determination Malini no longer lives in Illinois, and I'll get to why they had to make that determination in a moment, then we would have no quarrel and we would have to be an Indian. Judge Loza would be wrong. But what the Indian court failed to do... Now here's the section that's at issue. Except as otherwise provided in section 204, which isn't applicable here, a court of the state which has made a child custody determination consistent with section 201 or 203, and Illinois clearly did that in 2001, Malini was given sole custody. In 2005, there was again an agreed parenting order, she was again given sole custody. And by the way, how did they get to India? Vikram filed a motion which under the UCCJEA is regarded as a child custody motion asking for visitation in India. An agreed order entered on June 18 of 2009 permitting them to go to India. So it wasn't like she was just running off to India and this had been planned. There were motions, there were agreements. While in India, they talk about a multicultural education for this child, and they agreed to do it. In August, the child is going to be enrolled in the International School of Hyderabad. But, and let me talk to the permit that we're talking about here. Factually, this is all before Your Honor. When she, and this is going to be in our summary judgment motion as part of the record exhibit B, the permit you have, the permit provides that she is a visitor. It doesn't say that she's going to, she's allowed four years, but the permit itself says that she is a visitor. It's a government form though. Pardon? It's a government form. Yeah, and she had to do it. So it wasn't even like, sure she could have asked for one week, but they're going somewhere else with this. But the intention was to stay there four years, was it not? No, it was not. In fact, the intention was that they might, that they were going to try it, and it might work, but it might not. I said that because this makes common sense. But that's not anybody's brief. I mean, because it makes sense. Why would you go across, starting, prior to this, to 2009, how much time had Malini spent in India? Let's do that. She went there from time to time for vacations, and that was it. And not only that, her parents were here. Her parents are here. And she was worried about the security. They were talking about an agreed order that was 29 pages in length that we had prepared, keeping jurisdiction here. She trusted Vikram. She shouldn't have. She shouldn't have. And, by the way, you know, what counsel didn't mention and what, you know, is also clear is we were still litigating in the circuit court of Cook County. When he goes in to get his order on October ---- But it's over expenses and child support. Well, but, you know, the visitation order was also derived from those proceedings. But my point to Your Honor is, okay, it may have been over that, but these counsel were present in that courtroom on October 13th, the very day after they got the order. And I was there. Why does he go get an emergency order when he knows she's here and he has counsel present and knows she is represented here? You know why? Because he has a domestic battery conviction and because he ---- Counsel, counsel, that's not in the briefs. It is. It is in the record, Your Honor. It is in the record and was argued before ---- If you thought it was significant, Mr. Levitt, I think you would agree. The point was, the significance is that he didn't go to the circuit court of Cook County where he was. What was the emergency nature? Well, he had a child there in India. Yeah, but he has possession of the child. So why is it an emergency, by the way? Because she apparently emailed him something that he took to be ---- We don't have an agreement anymore. Wait, you know what? She emailed the following. You know what? The experiment didn't work. I'm not happy. And by the way, you know, we take ---- Our side takes them to test because nowhere does it say he got in a fight with the ---- she got in a fight with his grandmother. There was actually a security issue with respect to the child and a driver. If you take a look at the emails, which are clearly part of this record, it doesn't mention the mother. It says, send the child home. I have some security ---- It doesn't say security concerns, but I have concerns it's not working. And how long did they spend in India? I want to address that real quickly. It wasn't even a straight period. In September, they enrolled the child in August. In September, they're back here for a week. Why did she leave the child in India in October? Because the child was in school. But what could be clearer as to why she's here? She's here for CLE classes to keep her lessons. When she enrolled the child in school there, do you think she had the understanding the child would be there for at least a couple of years? Well, this, by the way, this is a school, no, not necessarily. So you're saying she didn't know that the child should be there for two years. She didn't think that. She wasn't sure of that. It was an attempt to see whether or not a multicultural education would work. You know, this is a school, by the way. It teaches in English. And it's where people who are diplomats and others bring their child for a year, a semester. And so we didn't know what was going to happen. She was willing to try it. But on October 7th, and by the way, this is five days, and you're right, it starts with the commencement of the action. Where is she? She is definitely here in Illinois. There's no question about it. And where is she? The email itself says, return the child to my home here in Illinois. So we get to the, if I may then, we get to the inquiry. Did the Indian court, yes, undertake the proper inquiry in order to assert its own jurisdiction and wrest jurisdiction from Illinois? In order to do so, this is what had to have happened. It continues to have exclusive Illinois, continues to have exclusive continuing jurisdiction until a court of this state, determines that the child and child's parents and any person acting as a parent do not presently reside in the state. It doesn't say move to India. It doesn't say reside in India. And by the way, what does he say? The Indian court found that Malini ordinarily is residing in India. So what? Did it find, as it must in order to be in factual circumstances and substantial compliance, as we see from 105, make the proper inquiry? Did Malini cease to live here? And of course there's nothing in the Did not the court use all the facts and circumstances of the child being enrolled in school, her coming there, her either losing or transferring her cases since she was an attorney here to someone else, and that you don't think that court could have come to a determination, we weren't there and we're trying to re-litigate what happened there, but you don't think they had enough information to make a determination that she was a resident there? Simple answer, no. They had to make the inquiry, but that's what he's telling you to find, that she was a resident there. It doesn't matter that she had a residence there. Even their best case, Jordan or Abam, allows for multiple residences. The issue is not whether or not she has a residence there. That's not the issue. The issue is did she give up her residence here? Well, counsel, according to what I'm reading in the uniform laws annotated, the comments of the drafters, they say the fact that the original determination state, Illinois, still considers one parent a domiciliary does not prevent it from losing exclusive continuing jurisdiction after the child, the parents, and all persons acting as parents have moved from the state. Because domiciliary, and if you read all of these cases, and the committee does comment on this, domiciliary and residence are different terms and they're not to be used in the same way. So that even if someone is a domiciliary, they can, and it seems odd to me, but this is what the cases say, even if you're a domiciliary in one state, if you're not residing there, if you stop maintaining a residence there, even if you maintain tax mailing and stuff, if you don't have a residence there, and you don't continue to reside there, you may still continue to argue you're a domiciliary, but if you don't have a residence there, it's a different story. And the issue is residency. Did she not rent some property there? Where? Oh, yeah. She rented the Taj Mahal named after their son that was built with her help at some point because she didn't want the parent, and she rented it from his parents, because she didn't want the parents without a lease coming in or out. And by the way, there was a three-month provision for her, and so you ask Justice Spiel, were they going to stay for two years? Why would she bargain for a three-month get-out clause? She bargained for a three-month get-out clause, and, of course, she exercised it on October 27th. Were these argued in India, the same argument? That's the point. They were not. Okay. Are you saying the court in India, their proceedings, fatally defective, they're gone because they didn't have a hearing, they relied on a different method of gathering evidence? Correct. You're saying, if you're right, we can end the case right now. Well, that's correct, and that's where we're going. If you believe Nuri to be the proper case, and, by the way, I'd like to comment, and I know I'm running a little time, on Abam and Jordan, it will come down to, ultimately, you'll find Nuri or you'll find Jordan. Jordan, we think, is not well-reasoned, and we think Nuri is well-reasoned. And Nuri, by the way, and let me get to Nuri in one moment, but I'm going to throw up a quote. Again, the test is not whether or not she resides in India. The Indian court found that she ordinarily resides in India. That's the finding they want. And then they say implicit in that finding is the fact that she's not residing here. But that's not true. You don't make that implicit finding. In fact, the findings that have to be made to be in substantial conformity with the UCCJA are specific findings. The specific finding must be made that she is not residing here in Illinois. That's what the Indian court failed to inquire about. That's why they're not in substantial conformity, and nowhere in their order does it say she does not reside here. This is what Nuri, and he says it's not central to Nuri. It's dicta. It's not dicta. The wife in Nuri argued that Pakistan should have jurisdiction because he actually moved there. He bought a house there during four years of litigation. He was arguing, and he acknowledged it. My mother bought me a house here. I was litigating for four years to get my child back. There's no question he was a resident of Pakistan then. But the issue in the California court was not whether or not he had obtained residency in Pakistan. The issue was whether or not he had maintained his California residence, which clearly he had. So this is from Nuri. If you accept Nuri, this is going to be the reasoning you follow. If not, you'll go another way. It is well established that a partner can have more than one residence. And this, by the way, is in line. They speak to the committee comments, Your Honor, and they speak to a number of the cases cited in his brief, TBIF, stats, and a number of the other cases are distinguished in Nuri. Nuri is a very well-reasoned decision, unlike the Jordan decision from Tennessee, unsighted. They say it is sighted. We can't. Pardon? Nobody's allowed to cite Jordan, and not to cut you off. We appreciate any help you get. I just wrote an opinion two weeks ago where my law clerk said the judge decided three on a non-presidential case. And I don't believe it was quite a three anyway, so I'm not going to take that. I'm with you on that. We've lost that battle, I think. But the point is Jordan was cited in 2003. It is not cited in any other case for the proposition that he is asking you to accept. Nuri is a relatively new case. It takes into account every case and almost every case in his brief. It is well established that a partner may have more than one residence. A partner's bare intent to return to the decreased state may not be sufficient for retention of jurisdiction if he is otherwise moved from the state. We hold that if he maintains a functioning residence in the decreased state, available for his own use at all times, he continues to presently reside in that state. Now, you know what they wanted? White wanted the California court to do in Nuri. Again, make an implicit finding that because he lived in Pakistan, he didn't live in California. The Nuri court said we declined to do that. The Nuri court said you must make that specific finding. There must have been that specific inquiry. There was not, and therefore, we're not going to make that implicit finding. That's what he's asking you to do here. Vikram is asking you to make an implicit finding that because of the Indian order, there's an implicit finding. She wasn't residing here in violation of 202. They make the point on the other side, of course, that Nuri the child was operating in California when the court's ruling. And here that's not so. If Mr. Labrador had an issue about the India Supreme Court's, you're on the Rules Committee, and like opposing counsel, you've both been in domestic relations for many, many years. And so you know from the rules that we have 150 days to rule on this case. With Nuri, we don't have to. There's no gun to our head. But we want to come to an answer as quickly as possible. I have a concern, which I expressed to opposing counsel, that if we rule prior to August 10th, I would assume that the India Supreme Court would consider that. If I can ask you, first I'll be asking you in a minute, what your position is on us staying things until you find out what happened in the direct appeal, which is something I would suggest makes a lot of sense just to me. But also, what are the positions in the India Supreme Court? Is there a question that the Supreme Court of India could say, no, we're deferring? They don't have that option, do they? No, he's asking them to defer to us, are they? Your Honor, the Indian case has been continued time and again. And it may be continued for a while. And I suspect the opposite is going on. They're waiting to hear from us. And so I'd say, you know, without regard to whatever may happen in India, your honors have this issue foursquare before you. Malini, as you all know, resides in Illinois. Malini, as you all know, resided in Illinois at the time. As you know, the case was on trial in the circuit court of Cook County. When he goes and gets an ex parte order, what do you need an ex parte order for? And by the way, let's not lose sight of the fact that he himself, not reported, Justice Murphy, to the Indian court, had written a contract in September to identify himself as an Illinois resident himself with a home in Palatine to buy a home for Malini to close on October 16th, three days after, three days after he went and got the order. So there's no question about the fraud in the sense that the, and again, Justice Murphy, the fraud that was perpetrated on the court, but we can't go to fraud because that takes us to Sophia. I'm not arguing fraud. What I'm arguing is that the Indian court failed to make the proper inquiry. And this is Nuremberg. It is not the party's departure itself that terminates the decreed state's exclusive continuing jurisdiction. Rather, it is when a court determines that all parties have ceased residing, not now ordinarily reside, but have ceased residing under the jurisdiction's laws without such a finding that the statutory condition terminating jurisdiction simply does not occur. Was that argued in the court in India? It didn't arise in India. Pardon? It didn't arise in India. So the court in India had all the facts basically that we have, or you're saying some of the facts they didn't have? They did not have all the facts, obviously. Who's fault is that? Well, it entered its order the way it entered its order. Some of these facts were presented. The nominee came in. So we're supposed to say they're wrong because they weren't presented with all the facts? You're supposed to take a look at their order respectfully, Your Honor, and see if that order should be followed. And if that order doesn't have the facts that we need it to have,  then you shouldn't recognize the order. And that's what Judge Loza said. No, because they did not say they aren't residents of Illinois. And so when you say can we come to different conclusions, the conclusion they had to reach they didn't reach. They didn't reach the conclusion, nor could they, that Malini ceased residing in Illinois. And as they didn't reach that conclusion, they are not in substantial conformity. And as a result, Your Honors, you should find that Judge Loza, who I think wrote a most well-reasoned decision, should be affirmed that, in fact, this mother, by the way, Cetagius was not outside this mother's company for more than a couple days his whole life. And while we talk nicely and try and maintain a certain dignity and decorum, this is a kidnapping. And this Court should be brave enough to recognize it for what it is, and this Court should enter the appropriate order. They are not in substantial conformity. Other courts have done it. California has done it time and again. Unfortunately, this is still too common an occurrence. And, in fact, I would ask that this Court express a bit of outrage. Malini brought some of this on herself. There is no question she should have had an agreement of some kind. She should have done something to protect herself. But when he marches the next party to that other court, when he has lawyers here on October 13th, there was no emergency. He could have come in here, but he couldn't fight it here because he couldn't win it here. He's three times conceded the first order, the second order, the visitation order, that she's a fit and proper parent. So how is he going to fight her here? There he can fight her because she's not there at the time. There he says she's got mental illness and all kinds of things, and, look, it's going to disturb the child. Okay. So they enter an order. And then there is some inquiry. And, by the way, you heard him talk about best interests and the judge. The judge, most of this order is about the best interests. Don't remove the kid from school. But you know what? Jurisdictions first, then best interests. That's why we're in the other appeal, because Judge Lakita Hardy's orders, we're dealing with best interests before the issue of jurisdiction. And so, Your Honors, I think this is really a clear case. And I think it does come down to you'll follow Nury, which I think is the well-reasoned case, or you won't. And I would hope Your Honors would find on the certified question that Judge Loza was correct, that the proper inquiry was not undertaken so that it's not even, Justice Murphy, a question of a decision on fact, but the proper inquiry wasn't  Without the proper inquiry, you don't get the determination because, again, keep in mind, in all of the cases that we're talking about, the UCCJEA is the backdrop. In India, it is not. The UCCJEA was given no regard in India. So in asking the questions, even if the questions were asked, they're not having regard. They're not having regard for the UCCJEA requirement. I think I've probably overstayed my time here. Unless there's another question, I guess, that you find and affirm Judge Loza's decision. One last question. Sure. Is it the duty of a court to inquire, or should they be presented with evidence? It's a question. Well, yeah, and that's a very fair question. India doesn't have to have regard for the UCCJEA. It doesn't. And it can enforce its own ruling based on its own jurisdiction. And all of the cases say that. But when you want to enroll the Indian order here, if you're hoping to have a proper order, it needs to recite certain things. And a certain inquiry needs to be undertaken. It was not. It was not. And it's nowhere in the order that Malini sees reciting here. In fact, Judge Loza confirms, and the facts confirm, even Vikram is reciting here. So, Your Honors, I don't think it's a question of the order. Justice Wilson always has thoughts on this issue.  The ultimate question, though, the attorney should give the proper facts for the proper issue. In India, this was not an issue. In other words, the facts that were being presented in India was for Indian jurisdiction, not for later enrollment here. He goes in for two pieces of relief, an emergency injunction and an O.P. asking for a change of custody. They are not having regard for the UCCJEA. So their questions and the answers are not with the backdrop of the UCCJEA there. So their questions, while you're answering them and they're inquiring and we should be presenting, have to do with Indian law, not with the UCCJEA. It's only when you bring it back here that we start the inquiries for whether or not we should enroll that order. Your Honors, we should not. It would be a travesty. I think we should not wait, Your Honors, because I think India is waiting for us. They'll see it as a sign of weakness from us if we don't enroll. Well, I hope it's not weakness. Well, I hope not. It's a hypothetical question. You should talk to Justice Wolfson sometime. I do from time to time. Thank you. No further questions? Thank you. No further questions. Thank you. Well, indeed, it's hot out here today outside, but we're not in Delhi. And a lot of what Justice Leavitt just told you should be arguments that should be made in the Indian Supreme Court in Delhi. Because those, a lot of his arguments, focusing on the e-mails, focusing on the type of the residency permit, those are all arguments against whether or not the order was correct, whether or not the Indian judge adjudicated things correctly. That is not for us to say. We do not sit in judgment of him. Our Supreme Court has said that. And that is effectively everything that you have just heard. You don't get to do that. There are no collateral attacks against orders entered by another state or another country. Why? Because you have the result. Because what can happen? You can have what happened here. Multiple courts asserting jurisdiction over the same child. It's axiomatic why that can't possibly be in the child's best interest. In fact, that's the very reason the UCCJEA was enacted, to resolve these sort of disputes. Counsel makes the point about the nature of the hearing and whether or not testimony was taken and whether or not it was under oath. Our statute speaks to that. This isn't in the briefs, but in Section 209 of the UCCJEA is entitled Information Submitted to the Court. And it has to do with what information is presented to the court regarding where everybody lives, address, date of birth, all the information. And at the end of that section, it says, The court may examine the parties under oath as to the details of the information furnished and other matters pertinent to the court's jurisdiction and disposition of the case. May examine. Our own statute doesn't require necessarily an evidentiary hearing. So for them to say that somehow the Indian proceeding was inadequate in that regard is belied by our own statute. Again, all we're left with on the other side is this semantical argument about residence. And this is not a question of does she have a residence here. It's where are you presently residing. This quotation from the Nury case. It is not the party's departure itself. Well, no. Just because you pick up and move somewhere, that in and of itself doesn't change anything. That doesn't usurp the initial child custody jurisdiction. What does is when a court makes a finding of residency. And that's what we have here. If they went and lived in India happily for four years, eight years, whatever, and never went to court in India, Illinois would have its exclusive continuing jurisdiction because the Indian court never acted. Once you have it, once the determination is made, that is when the jurisdiction is lost under 202A2. And our statute empowers the Indian court to do just that. Now, Justice Leavitt makes my point about the Indian court doesn't have the UCCJEA. They don't have to look to the UCCJEA to determine if it has jurisdiction. And I submit to you is why this case is unique. And why I point out in the brief that there are two classes of orders entitled to be recognized. Orders under the UCCJEA. Orders under in substantial conformity with the act. And orders under factual circumstances in substantial conformity with the act. The latter class of orders only is found in two places. Orders from Native American tribunals and orders from foreign countries. Why? Because as Justice Leavitt said, they don't have the UCCJEA. Nor are they required to look to the UCCJEA to determine if they have jurisdiction or whether or not they should take jurisdiction. But that doesn't mean that we don't recognize their orders. In fact, the predecessor statute to this act, the UCCJEA, had no provision regarding the recognition of foreign countries, orders from foreign countries. It was sort of a throwaway paragraph at the end. And some courts said, well, we can't recognize it at all because it's just some sort of policy statement at the end. They made a purposeful decision to say in enacting 105, these orders are going to be recognized. And that's why the court has to look to the factual circumstances because they're not looking to the UCCJEA to determine whether or not they have jurisdiction or whether or not they should assume it based on prior orders entered by a court that was operating under the UCCJEA. Again, I know, Justice Quinn, you said that this wasn't a kidnapping. Justice Leavitt persists in characterizing this as such. I take issue with that. On behalf of my client, my client is one of the largest philanthropists in the world. He has dedicated his professional life to empowering the poor of India. He is not a kidnapper. He has been taken to task in the press. He has had allegations rendered against him from the U.S. State Department, all of which have been orchestrated by the other side. And he doesn't deserve it. And he doesn't deserve to be further characterized as such in this court. And I think the court recognizes that this was not a kidnapping. This was not a snatching. This was two people deciding to relocate to India, got into a disagreement, and my client went to court in the best interest of his child. Because after making a major life decision, a major life move, he didn't want his son's education disrupted again. And his right as the father, and just because of a prior right of sole custody, does not permit the mother to act contrary to the child's best interest. Courts of law are always the check on that. It is not unfettered rights to make whatever decision you want to make about the child. If it's not in the child's best interest, that's why we have courts of law. Come to court, look, judge, I don't think this is good for my kid. He had every right to do that. And all we're left to argue here is this, well, where are you presently residing? Okay? This is not an inquiry into residence. Presently residing is where are you physically located? Where did you intend to remain here and now when the action was commenced? And undisputedly in this case, based on not only the Indian order, where nearly all of it is devoted to the adjudication of these facts and the facts supporting its assertion that she did live there because she intended to remain there for the future, but that evidence in and of itself. And how the circuit court below, even if there was no order, how we could have decided residency in this case on summary judgment, it's simply not possible. I respectfully request the answer to the certified question is no. I would implore this Court to act quickly. I would implore this Court to act pursuant to Supreme Court Rule 366 vacate the judgment entered March 30th, enter judgment in my client's favor and declare that the orders entered by the Indian courts are entered in substantial conformity with the UCCJEA and that they are entitled to validity and recognition in this State. Thank you. Any questions? Okay, the Court will take the case under advisement or it will be in recess. Thank you.